UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ELIZABETH G. STREZA,

    Plaintiff,

v.

SOUTHERN NEVADA CULINARY AND
BARTENDERS PENSION PLAN, ET AL.,

    Defendants.

Case No. 22-cv-4019-NKL

**ORDER**

Before the Court is a Motion to Dismiss filed by Defendants the Southern Nevada Culinary and Bartenders Pension Plan, Tracy Thompson, Ted Pappageorge, and the "Board of Directors." Doc. 12. Also before the Court is pro se Plaintiff Elizabeth Streza's Motion to Amend her Complaint. Doc. 26. As discussed below, Ms. Streza's Motion to Amend is DENIED, Defendants' Motion to Dismiss is GRANTED, and this case is DISMISSED with prejudice.

## I.   BACKGROUND

Plaintiff Elizabeth Streza is a vested participant in the Southern Nevada Culinary and Bartenders Pension Plan ("The Plan"), a defined benefit plan. Ms. Streza was covered by the Plan from 1993 to 1998. Doc. 13, at 216–17 (Ltr. from Plan Denying Ms. Streza's appeal). Ms. Streza alleges that, in 1998, Gabriela Tshudy—presumably an employee of the Plan's third-party administrator—told her that she "cannot collect [her] pension lump sum and monthly benefit until [she] turn[s] 55 years old." Doc. 4 (Amended Complaint), at 5. Later, in 2011, Ms. Streza called the Plan, and was allegedly told that the retirement age had "changed" to 59. Finally, in May 2021,

Ms. Streza alleges the Plan told her that she must be 62 to retire, and that the monthly and lump sum options were significantly lower than she believed and had previously been told they would be.

In May of 2021, Ms. Streza made a claim to the Plan for a lump sum payment of $72,250—which represented her calculation of the full amount of contributions made on Ms. Streza's behalf plus interest. Doc. 13, at 216. The Plan denied the claim because, per the terms of the Plan, benefits are determined based on the number of hours worked in covered employment, not by calculating total employer contributions plus interest. Doc. 13, at 216. Furthermore, lump sum payments can only be of up to 50% of a participant's total benefit, and are only available when the participant reaches age 62. On January 15, 2022, Ms. Streza appealed the denial of benefits, and maintained that she was entitled to full payment of all contributions plus interest. Doc. 13, at 216. The Plan denied the appeal on March 15, 2022—after Ms. Streza first filed in this Court—and reiterated that, under the terms of the Plan, "benefits are determined based on hours worked and a set monthly benefit amount. They are not based on contributions or interest earned. Also, lump sum payments are only payable at age 62 and are limited to 50% of a participant's total benefit." Doc. 13, at 216. The Plan's denial letter included a calculation of Ms. Streza's hours of covered employment and her monthly benefit amount. Because that amount was less than the minimum monthly payment amount provided by the Plan, it was rounded up to $175.00 per month. Doc. 13, at 217. The Plan further explained that, at age 62, Ms. Streza could elect to receive a monthly lifetime benefit of $175.00, or a lump sum payment of $10,655.75 and a monthly benefit of $87.50. The Plan also explained that Ms. Streza could elect to receive benefits before age 62, but doing so would result in a reduced monthly benefit without a lump sum payment option. Doc. 13, at 217. Finally, the Plan explained that retirement benefits are determined based on the terms of the Plan

Documents in effect at the time a participant applies for benefits, but it noted that, except for a few increases in the monthly benefit amounts over the years, the relevant provisions of the Plan had not changed. Doc. 13, at 217.

Ms. Streza first filed a Motion to Proceed in Forma Pauperis in this Court on February 14, 2022, Doc. 1, while her administrative appeal remained pending, and, after the Court gave her leave to proceed in forma pauperis, she filed her Complaint on February 22, 2022. *See* Doc. 1; Doc. 3. Ms. Streza amended her Complaint the next day. Doc. 4 (Amended Complaint). Defendants filed a Motion to Dismiss on May 3, 2022, which Ms. Streza opposed. Docs. 14 & 15 (Motion to Dismiss and Supporting Suggestions); Docs. 15 & 20 (Ms. Streza's Opposition Filings).[1]

## II. DISCUSSION

### A. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That said, the complaint "does not need detailed factual allegations," just "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving

---

[1] Ms. Streza argues several times that because the Court set "Arbitration," the Defendants' Motion should be moot. As an initial matter, the Court believes Ms. Streza to be referring to mediation, which has been ordered in this case. *See, e.g.*, Doc. 8. Mediation generally does not stay the proceedings in federal court, and no party has requested such a stay here. Similarly, it does not follow that because this case was included in the Mediation and Assessment Program that Defendants' substantive legal arguments in favor of dismissal are moot.

party . . . but [is] not bound to accept as true [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (internal citations and quotation marks omitted). When the plaintiff is proceeding *pro se,* she is held to a "lesser pleading standard," *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)), and the Court must construe the pleadings "liberally." *Miles v. Ertl Co.*, 722 F.2d 434, 434 (8th Cir. 1983) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

Generally, when deciding a Rule 12(b)(6) motion, a court may not consider materials outside of the pleadings without converting the motion into one for summary judgment. *Noble Sys. Corp. v. Alorica Cent.*, *LLC*, 543 F.3d 978, 982 (8th Cir. 2008). However, it may consider materials that are "necessarily embraced by the pleadings" without treating the motion as one for summary judgment. *Id.* (internal quotation omitted). Documents referenced in a complaint and filed with the court while briefing a defendant's motion to dismiss are "embraced" by the complaint and therefore part of the "Rule 12 record." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (holding that termination letter and memorandum of understanding referenced in complaint were necessarily embraced by the pleadings); *Bendsen v. George Weston Bakeries Distrib. Inc.*, 08-cv-50, 2008 WL 4449435, at *1 (E.D. Mo. Sept. 26, 2008) (holding contracts and plans referenced in complaint and filed with motion to dismiss were necessarily embraced by complaint). In ERISA cases, this can include plan documents and official decisions of plan administrators that relate to a plaintiff's claims. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 n.3 (8th Cir. 2020) ("Like the district court, we consider the relevant fund prospectuses and plan disclosure documents because they are 'embraced by the pleadings.'"

(citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823)).[2]

Ms. Streza does not specifically cite to any legal source for her claims.[3] As the Defendants correctly note, she does not have to so long as her Amended Complaint gives fair notice of her claims. *See generally Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). Ms. Streza generally argues that the Plan wrongfully denied her pension benefits and made material misrepresentations. Since the Employee Retirement Income Security Act ("ERISA") preempts all state and common law causes of action relating to employee benefit plans—including those related to the processing of a participant's claims for benefits—the Court construes Ms. Streza's Amended Complaint to invoke only ERISA's civil enforcement scheme. *See generally* 29 U.S.C. § 1144 (establishing ERISA preemption); 29 U.S.C. §1132(a) (establishing civil enforcement by a participant seeking to recover funds owned to the participant by a benefit plan); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) ("Congress' specific reference to § 301 of the [Labor Management Relations Act] to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a).") (internal citation omitted).

Read liberally and drawing all inferences in her favor, Ms. Streza's Amended Complaint attempts to state a claim under ERISA, specifically "to recover benefits due to [her] under the

---

[2] *See also Chesterfield Spine Ctr., LLC v. Healthlink HMO, Inc.*, No. 15-cv-1169, 2016 WL 2594069, at *1 (E.D. Mo. May 5, 2016) (holding, in an ERISA case, that the court could consider letter denying plaintiff's claim and response letter from plaintiff's counsel when deciding Rule 12(b)(6) motion); *Jordan v. Aetna Life Ins. Co.*, 11-cv-635, 2012 WL 274693, at *3 n.4 (E.D. Mo. Jan. 31, 2012) (considering plan documents, including plaintiff's claim file and correspondence relating to plaintiff's claim, on a Rule 12(b)(6) motion).

[3] Ms. Streza sought leave to amend, in part to identify ERISA as the source of her claims. The Court will address that Motion below.

terms of [her] plan." 29 U.S.C. § 1132 (a)(1)(B). Furthermore, the Amended Complaint includes allegations about the misrepresentations of employees associated with the Plan, which the Court construes as attempting to state a claim for fiduciary misrepresentation under ERISA. The Court will address each claim below.

> i. Whether Ms. Streza's ERISA Claims Must Fail Because She Did Not Exhaust Her Administrative Remedies Before Filing in Federal Court

The Defendants argue that Ms. Streza's ERISA claims must fail because she did not properly exhaust the remedies provided for by the terms of the Plan. While ERISA itself does not require exhaustion, "[f]ederal courts applying ERISA have uniformly concluded that benefit claimants must exhaust the review procedures mandated by 29 U.S.C. § 1133(2) before bringing claims for wrongful denial to court." *Kinkead v. Sw. Bell Corp. Sickness and Accident Disability Benefit Plan*, 111 F.3d 67, 68 (8th Cir. 1997) (internal citations omitted). This means that when the relevant plan documents permit participants to appeal the denial of a claim for benefits within their plan, a participant must attempt to resolve the matter through the steps established by the terms of the plan. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 941 (8th Cir. 2010) (internal citation omitted).

It is clear from the face of the Amended Complaint that Ms. Streza failed to fully exhaust the Plan's procedures. While Ms. Streza began the Plan's appellate process, she did not wait for it to conclude before filing in federal court. Ms. Streza properly appealed her adverse benefit determination on January 15, 2022, and filed in this Court on February 14, 2022. The Plan resolved her appeal on March 10, 2022, which appears consistent with the timeline for resolution of appeals set forth in the Plan. Ms. Streza received notice of that decision, at earliest, on March 15, 2022, nearly a month after filing in this Court. Doc. 13, at 216. Accordingly, Ms. Streza had not properly exhausted the Plan's review procedure when she filed in this Court.

That said, it does not follow that Ms. Streza's claims should be dismissed.[4] Courts handle a failure to exhaust in this context in various ways. In cases where a plaintiff has not, but could still, exhaust remedies provided by the governing plan agreement, courts have stayed the federal litigation. *Galman*, 254 F.3d at 769 (noting the district court stayed the lawsuit while plaintiff exhausted his remedy under the relevant plan). This makes sense, especially in cases in which a plaintiff has followed the relevant review procedures, and simply awaits a decision of a plan's final appellate body. *See generally Metro. Life Ins. Co.*, 501 F.3d at 279–280 (explaining the difference between a jurisdictional and prudential requirement). In contrast, when, as here, a plan resolves a plaintiff's appeal after she has filed in federal court, but before any dispositive motion comes before the court, it is appropriate to treat the plan's remedies as fully exhausted. *Roig v. The Ltd. Long-Term Disability Program*, No. 03-cv-1059, 2004 WL 325219, at *5 (E.D. La. Feb. 20, 2004) ("In this case, however, the plan administrator has already completed its review of plaintiff's claim. MetLife continued to review the claim after plaintiff filed suit and affirmed its denial of long-term benefits on August 7, 2003. Because plaintiff's administrative remedies are exhausted, this case is now ripe for judicial review.").

Dismissing Ms. Streza's claims now, when the Plan has made a final decision on her appeal, advances none of the prudential concerns for which exhaustion was adopted in the ERISA

---

[4] In the ERISA context, exhaustion is not a jurisdictional requirement, it is an affirmative defense. *See, e.g.*, *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) ("[E]RISA's exhaustion doctrine places no limits on a federal court's subject matter jurisdiction."); *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 445–46 (2d Cir. 2006) (concluding exhaustion is an affirmative defense, not a jurisdictional bar); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 309 (5th Cir. 2008) ("Other circuits have expressly held that ERISA exhaustion is not jurisdictional, and we agree."). While the Eighth Circuit has not explicitly so held, it has implicitly endorsed a district court's staying federal litigation while a plaintiff exhausted plan remedies for denied benefits claims, suggesting it did not consider ERISA exhaustion jurisdictional. *Galman*, 254 F.3d at 769.

context in the first place.⁵ The Court therefore deems the Plan's administrative remedies exhausted.

### ii. Whether Ms. Streza States a Claim for Benefits Under ERISA

When a plaintiff challenges a plan's decision on a claim for benefits under ERISA, the plaintiff's claim "stands or falls by 'the terms of the plan[.]" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1132(a)(1)(B)). Furthermore, when—as here—the plan gives the administrator or fiduciary "discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" courts will only overturn the plan's decision if it is arbitrary and capricious.⁶ *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This means the Court must uphold the Plan's decision if it is "supported by substantial evidence," which means "more than a scintilla but less than a preponderance." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). "Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable

---

⁵ The Eighth Circuit has not yet decided whether the exhaustion requirement applies to ERISA fiduciary duty claims, despite acknowledging a circuit split on the issue. *See Jones v. Aetna Life Insurance Co.*, 943 F.3d 1167, 1169 (8th Cir. 2019). At least one district court in the Eighth Circuit has found that exhaustion does not apply to stand alone ERISA fiduciary duty claims. *Skelton v. Davidson Hotels LLC*, 18-cv-3344, 2020 WL 6875503, at *5 (D. Minn. Nov. 23, 2020). The Eighth Circuit affirmed that court, though it did so without discussing the exhaustion requirement for ERISA fiduciary duty claims. *Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968 (8th Cir. 2022). The Court assumes, then, that the Eighth Circuit would conclude that exhaustion does not apply to Ms. Streza's fiduciary duty ERISA claims. Even if it did, because the Plan has now resolved Ms. Streza's appeal, there is no exhaustion issue.

⁶ The Plan charges the Trustees with "full discretion and authority" to decide "questions concerning the interpretation or administration of the Plan" and "all questions relating to eligibility for plan benefits." *See* Doc. 13, at 73. Accordingly, it is appropriate in this case to review the Plan's decision using the arbitrary and capricious standard. *See Silva v. Metro Life Ins. Co.*, 762 F.3d 711, 717–18 (8th Cir. 2014) (analyzing Section 1132(a)(1)(B) claim under abuse of discretion standard where plan provides that fiduciary "shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the plan").

interpretation could have been made." *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000).

Ms. Streza's allegation that it was arbitrary and capricious for the Plan to deny her claim is not plausible because the terms of the Plan squarely foreclose the benefits she seeks. *Kennedy*, 555 U.S. at 300 (holding that claims must be resolved by looking to the face of the written plan documents and that ERISA forecloses inquiry beyond the terms); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (ERISA's statutory scheme "is built around reliance on the face of written plan documents"). The Plan Documents contradict Ms. Streza's claim in several ways.

First, Ms. Streza claims that the Plan has changed the Regular Retirement Date—the date on which she can claim her full retirement benefits. As early as June 1993, and continuing today, the relevant Plan Documents have explained that the Regular Retirement Date is the date an employee reaches age 62 and has worked in covered employment for a certain number of years ("Pension Credit"). Doc. 13, at 32. It is true that, as reflected in the Plan Documents, the Plan has changed the amount of Pension Credit required to retire at various times; but Pension Credit is not the issue here. As relevant to Ms. Streza, who performed covered employment after January 1, 1997, the Regular Retirement Date is the date on which she turns age 62 and has five years of Pension Credit. The Parties appear to agree that Ms. Streza has five years of Pension Credit, and neither Party suggests that Ms. Streza's claim was denied on this basis. Doc. 13, 217. Importantly, while Ms. Streza argues that the Defendants have not attached or produced the 1998 Pension Plan, she does not allege—plausibly or otherwise—that Plan Documents ever stated the Regular Retirement Age was anything but 62. Indeed, as discussed, the Plan documents before the Court illustrate that, as early as 1993 and continuing today, the Plan has required a participant to reach

age 62 before she could retire and receive full benefits. *See* Doc. 28, 7–28.

Second, Ms. Streza argues that, when she spoke to representatives of the Plan in 2021, she was told the lump sum and monthly benefits to which she was entitled were substantially lower than she expected from previous conversations. However, once again, Ms. Streza has not alleged that the substantive terms of the Plan—at any time—would have entitled her to claim the amount she seeks, and the Plan documents plainly state otherwise. *See* Doc. 13, at 34–36 (explaining the calculation of Monthly Accumulated Benefit and the Minimum Pension Payments); 37 (explaining that lump sum payments are unavailable to those who retire early); 57 (explaining that those who retire at the Regular Retirement Age may elect to receive a lump sum payment in the "amount equal to the Actuarial Equivalent of [50%] of his monthly pension"); *see also* Doc. 28, 9–98 (Plan Documents and material amendments since 1993). At bottom, Ms. Streza appears to believe that she is entitled to the actual amount of her employer's contributions to the Plan, plus interest. Under the terms of the Plan, that is not, and has never been, true.[7] Thus, from the face of the Amended Complaint and the materials necessarily embraced by it, Ms. Streza has not pled a plausible claim for benefits.

To counter the Plan's language, Ms. Streza points to three conversations with Plan employees: first, in 1998, when she was told that the Regular Retirement Age was 55, second in 2011 when she was told that the Regular Retirement Age changed to 59, and finally in 2021, when

---

[7] The Plan is a defined benefit pension plan, meaning "retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999) (holding that, in a defined benefit plan "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool. Instead, members have a right to a certain defined level of benefits, known as 'accrued benefits.' That term, for purposes of a defined benefit plan, is defined as "the individual's accrued benefit determined under the plan [and ordinarily is] expressed in the form of an annual benefit commencing at normal retirement age.").

she was informed that the Regular Retirement Age was, in fact, 62. *See* Doc. 3 at 5. Drawing all inferences in Ms. Streza's favor, it appears that during these conversations, she was also informed how much money she could expect to receive. Even construed liberally, Ms. Streza does not allege that the Plan's *terms* ever supported what she was told.

While Ms. Streza alleges that Plan representatives provided this information, as a matter of law, oral representations cannot modify a plan's unambiguous written terms. *Jensen v. SIPCO*, 38 F.3d 945, 953 (8th Cir. 1994) ("Most courts have held that ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise."); *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 586 (7th Cir. 2000) ("We simply have rejected the claim that bad advice delivered verbally entitled plan participants to whatever the oral statement promised, when written documents provide accurate information.") (internal citations and quotations omitted).[8] When the Plan denied Ms. Streza's appeal, it not only clearly and succinctly explained the provisions of the Plan that applied, and provided them to her, but it also comprehensively walked through the calculation of both her Regular Retirement and Early Retirement options. *See* Doc. 13, at 216–217. It also did so twice before—even before Ms. Streza filed in this Court—in response to letters from Ms. Streza. *See* Doc. 25-1, at 16 (Ltr. from Plan dated Dec. 21, 2021); 7 (Ltr. from Plan dated Jun. 18, 2021). The Plan's explanation has never changed.[9] The relevant Plan Documents are before the Court,

---

[8] *See also Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 856 (7th Cir. 1997) ("In other words, if the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary."); *see also Slice v. Sons of Norway*, 34 F.3d 630, 634–35 (8th Cir. 1994) ("Estoppel can only be employed when the terms of the plan are ambiguous and the communications constitute an interpretation of that ambiguity."); *Straub v. W. Union Tel. Co.*, 851 F.2d 1262, 1265 (10th Cir. 1988) (holding that because "[plaintiff] is receiving the benefits to which he is entitled under the express terms of defendant's employee benefit plan," he had no claim under ERISA, even though there had been an oral representation that he was entitled to more).

[9] In the Plan's June 18, 2021, estimate of Ms. Streza's monthly payment, it did mistakenly omit that Ms. Streza's (correctly calculated) Earned Benefit of 139.29 a month would be increased to

and they squarely foreclose Ms. Streza's argument.

The Plan representatives' oral statements cannot defeat the Plan's unambiguous terms.[10] Because Ms. Streza's claim for benefits "stands or falls by 'the terms of the plan[,]'" it must be dismissed. *See Kennedy*, 555 U.S. at 300.

### iii. Whether Ms. Streza States a Claim for Material Misrepresentation

Read liberally, Ms. Streza's Amended Complaint could attempt to state a claim for breach of fiduciary duty because of misrepresentations by those affiliated with the Plan, pursuant to § 1132(a)(2). Ms. Streza's fiduciary duty claim fails for at least two reasons.

First, Ms. Streza cannot seek individual benefits through an ERISA fiduciary duty claim. The Plan is a defined benefit pension plan. Accordingly, § 1132(a)(2) provides relief only for the benefit of the Plan as a whole, not any individual plaintiff. *Pilger v. Sweeney*, 725 F.3d 922, 926 (8th Cir. 2013). Said differently, ERISA fiduciary duty claims in this context do "not provide a remedy for individual injuries distinct from plan injuries[.]" *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). Ms. Streza does not seek Plan-wide relief. Instead, she wants "Defendants to pay [her]—and only [her]—extra retirement benefits. Doing so would take money out of the [Plan], for the sole benefit of Plaintiff[]. Because the [Plan] is a defined-benefit plan,

---

the Plan's minimum payment of 175.00 a month. The Plan recognized that mistake and corrected it.

[10] Ms. Streza argues that the Plan Documents are long, technical, and written in "legal language." *See* Doc. 29, at 4. Even accepting that the Plan Documents are complex legal documents, ERISA requires plans to provide participants a Summary Plan Description ("SPD"), which describes the rights, benefits, and responsibilities of participants under the plan in language designed to be understood by plan participants. Ms. Streza does not allege any deficiency in the Plan's SPD. *See, e.g.*, Doc. 28, at 7 (SPD in effect as of January 1, 1993).

[Ms. Streza] cannot recover this individualized relief in a § 1132(a)(2) claim." *Pilger*, 725 F.3d at 926.

Second, even assuming Ms. Streza could bring a fiduciary duty claim, she has not plausibly alleged one. To succeed on such a claim, Ms. Streza must allege that a fiduciary affirmatively miscommunicated material matters regarding the Plan and that she "reasonably relied, to [her] detriment, on [the] material misrepresentation or omission." *Boyd v. ConAgra Foods, Inc.*, 879 F.3d 314, 322–23 (8th Cir. 2018). There are no allegations that Ms. Streza relied on the Plan's representations to her detriment. And even if there were, as a matter of law, Ms. Streza has not plausibly alleged that it was reasonable for her to do so. The terms of the Plan—which are and were always available to Ms. Streza—clearly establish when Ms. Streza would have been entitled to benefits and how much those benefits would be. When, as here, the alleged misrepresentations contradict the plain terms of the Plan, and those terms are available to the plaintiff, it is not reasonable to rely upon the oral misrepresentations. *Huang v. Life Ins. Co. of N. Am.*, 801 F.3d 892, 900–01 (8th Cir. 2015) (holding that, because "there is nothing unclear or unusual about [the Plan's] written requirements[,]" "the clarity and pedestrian nature of the written requirements, coupled with the uncertainly and vagueness surrounding the purported oral representation, establish that the district court was correct to deem any reliance on the oral representation unreasonable."). Accordingly, Ms. Streza's fiduciary duty claim shall be dismissed.

### B. Motion to Amend Complaint

Also pending is Ms. Streza's Motion to Amend her Complaint. Doc. 26. The Court must "freely give leave to a party to amend its pleadings when justice so requires," Fed. R. Civ. P. 15(a), but it may properly deny a motion to amend when such amendment would be futile. *Popoalii v. Corr. Med. Services*, 512 F.3d 488, 497 (8th Cir. 2008). Amendment is futile if the proposed

amended complaint fails to state a claim under the traditional Rule 12(b)(6) standard. *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018); *see also* Section II(A), *supra*.

Ms. Streza's proposed amendment is futile. In her Motion, Ms. Streza alleges no new facts; she simply states that she seeks to amend her complaint to include claims under ERISA. As the Court explained, it has construed Ms. Streza's Complaint as attempting to invoke ERISA. The Defendants also analyzed Ms. Streza's claims under ERISA. Accordingly, permitting amendment on this basis would not rescue Ms. Streza's claims from dismissal.

The only "new" information identified by Ms. Streza is a citation to 29 U.S.C. § 1132(c), which permits recovery from a plan administrator for failure to provide certain information required by ERISA. Construed liberally, Ms. Streza claims that the Plan failed to provide her pension benefit statements as required by 29 U.S.C. § 1025(a) and failed to provide her with relevant Plan Documents in violation of § 1132(c). Both claims would fail. First, pursuant to 29 U.S.C. § 1025, once a plan participant has left covered employment, the administrator of a defined benefit plan, like the one at issue here, need only provide a pension benefit statement upon written request. There is no allegation or representation that Ms. Streza ever made such a written request that was denied.[11] Furthermore, as discussed, Ms. Streza failed to plausibly allege that the Plan did not provide her with Plan Documents. To the contrary, Ms. Streza simply alleges that the Plan provided the incorrect documents. This is not enough, especially given that the documents themselves demonstrate that what Ms. Streza seeks—a stand-alone 1998 Plan Document—does

---

[11] To the extent Ms. Streza claims that the Plan is liable for not providing her information about the value of her employer's contributions to the Plan on her behalf and the Plan's return on those investments, the Plan is not required to provide that information, even if she had requested it, under § 1132(c). 29 U.S.C. § 1025(a)(1)(B) and (a)(2) explain when a pension benefit statement must be provided and what it must contain. For a defined benefit plan, the required information does not include the value of an employer's contribution or performance.

not exist. *Zean v. Fairview Health Services*, 858 F.3d 520, 527–28 (8th Cir. 2017) (affirming dismissal of a TCPA claim that was expressly defeated by exhibits embraced by the pleadings). Accordingly, Ms. Streza's Motion to Amend is DENIED.

### C. Whether Dismissal Should Be with Prejudice

The Defendants ask that the Court dismiss Ms. Streza's claims with prejudice. A district court, in its discretion, may dismiss a pleading for failure to state a claim with or without prejudice. *See Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012). Dismissal with prejudice may be warranted if amending the pleading would be futile. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009).

Because, as discussed above, the operative Plan Documents directly foreclose Ms. Streza's claim for benefits under § 1132 (a)(1)(B), no additional facts could be pled to make it viable. Accordingly, Ms. Streza's § 1132(a)(1)(B) claim is dismissed with prejudice.

Similarly, Ms. Streza's misrepresentation claim under § 1132(a)(2) is dismissed with prejudice for two reasons. First, Ms. Streza seeks individualized, as opposed to plan-wide, relief, which is not available under § 1132(a)(2). *Pilger*, 725 F.3d at 926. Second, because the terms of the Plan Documents directly contradict the Plan's alleged misrepresentations, amendment would not permit Ms. Streza to plausibly plead that it was reasonable for her to rely on those misrepresentations, even if she properly alleged that she had done so to her detriment.

Accordingly, Ms. Streza's Amended Complaint shall be dismissed with prejudice.[12]

---

[12] Ms. Streza also filed a "Reply to Defendants' Support to Motion to Dismiss." Doc. 29. The Court construes this as a Surreply in Opposition to Defendants' Motion to Dismiss. Normally, such a filing is not allowed without first obtaining leave of Court. However, the Surreply does not save Ms. Streza's claims. Ms. Streza claims that she did allege that the Plan was amended "to alter the retirement age of 55 to 59," and subsequently to 62. *See* Doc. 29, at 1. Even accepting that this is true, Ms. Streza does not *plausibly* allege that the substantive terms of the Plan were ever amended. Ms. Streza herself pleads that she believes the Plan was amended only because of

## III. CONCLUSION

While Ms. Streza is not entitled to relief under ERISA, the retirement benefits to which she is—and always has been—entitled under the terms of the Plan will be available to her when she reaches age 62. The Plan also establishes the procedure, and the benefits available, should Ms. Streza choose to retire early. *See* Doc. 25-1, at 11 (Plan's explanation of Ms. Streza's Early Retirement benefits); Doc. 28, at 13, 16–17, 21 (Plan Summary Document). However, Ms. Streza is not entitled to relief under ERISA. The plain terms of the Plan demonstrate that her claim for benefits was correctly denied and a ERISA fiduciary duty claim cannot provide her the relief she seeks. For the reasons explained, Ms. Streza's Motion to Amend is DENIED as futile and Defendants' Motion to Dismiss is GRANTED and this case is DISMISSED with prejudice.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 7/8/2022
Jefferson City, Missouri

---

conversations she had with Plan employees. But the terms of the Plan—in 1993, in 1998, and at every point thereafter—make clear that the Regular Retirement Age in this context is and always was 62. While the Court generally accepts a plaintiff's factual allegations as true on a 12(b)(6) motion, dismissal is proper when the exhibits embraced by the complaint unequivocally defeat a plaintiff's claim. *Zean*, 858 F.3d 527–28. The Plan Documents show that at no point was the Regular Retirement Age 55 or 59; Ms. Streza received incorrect information. Ms. Streza identifies several amendments to the Plan, which provide for a cost-of-living adjustment and supplemental payments to suggest that the Plan was amended in ways that affected her benefits. Both provisions applied only to those who had retired before a certain date, long before Ms. Streza could. The cited provisions explicitly state that they have no impact on any future retirements, and that any future increases or supplemental benefits shall be made at the "sole and absolute discretion" of the Board of Trustees. *See* Doc. 29, at 2 (identifying 1998 Amendments to Article IV as indicating the Plan has been amended and that Ms. Streza is entitled to additional benefits); Doc, 28, at 96–97 (1998 Amendments to Article IV of the Plan, establishing a supplemental benefit and cost of living adjustment for those whose pension had commenced before specific dates in 1997 and 1998). The remainder of Ms. Streza's Surreply discusses fiduciary duty claim. As explained, Ms. Streza's fiduciary duty claim is not cognizable.